IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELIZABETH BERRÍOS MEJÍAS<br><br>    Plaintiff<br><br>v.<br><br>IKON BENEFITS GROUP<br>    Defendant | CIVIL NO.  10-1029 (FAB-CVR)<br><br>EMPLOYMENT DISCRIMINATION<br><br>(JURY TRIAL REQUESTED) |

**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF[1]**

COMES NOW Defendant Ikon Benefits Group ("Defendant" or "Ikon") and respectfully states and prays:

## I.  INTRODUCTION

Throughout her two and a half years of active employment with Ikon, Plaintiff Elizabeth Berríos Mejías ("Plaintiff" or "Berríos") worked in two different administrative support positions under the supervision of Ikon's President, Omar Haedo ("Haedo"). She alleges that on or around May of 2008, Haedo began sexually harassing her by making comments with sexual connotations after a former employee of Ikon alleged the existence of a sexual relationship between Berríos and Ikon's Vice-President, Felix Garcia ("García").  Berríos did not promptly report these alleged incidents of harassment through the proper channels and even admits that she did not review the reporting procedure explicitly set out in Ikon's Employee Manual for notifying alleged instances of harassment and discrimination. Instead, in November of 2008, Berríos ceased actively

---

[1]   Ikon is not requesting dismissal of Plaintiff's claims under Act No. 80 of May 30, 1976. P.R. Laws. Tit. Ann. 29 § 185a et seq.

working at Ikon due to a medical leave and after five (5) months of being absent she sent a resignation letter where, for the first time, she accused Haedo, in writing, of sexually harassing her. Weeks later she filed a sex discrimination, harassment and retaliation charge with the Equal Employment Opportunity Commission and the Puerto Rico Department of Labor.

After obtaining the requisite right to sue letter from the EEOC, Berríos sued Ikon for: 1) sex, gender discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") and Puerto Rico local anti-discrimination and harassment statutes; and (2) retaliation under Title VII, plus additional claims raised under this Court's supplemental jurisdiction. Ikon is entitled to summary judgment on all of the federal and local claims related to sex discrimination and sexual harassment for the following reasons:

**First**, Ikon has in place reasonable procedures to report incidents of sexual harassment and discrimination. Despite the availability of these reporting procedures, of which Berríos acknowledged receipt, she admitted during her deposition that she did not review the Employee Manual to check the procedure to report sexual harassment and she did not report the alleged sexual harassment to the Human Resources office of National Financial Partners ("NFP"), Ikon's parent company, to which Haedo, the alleged harasser, reported. Thus she unreasonably failed to avail herself of the corrective or preventive measures provided by Ikon.

**Second**, Berríos cannot establish a *prima facie* case of unlawful retaliation since mere *participation* in an internal investigation conducted by an employer, absent some

pronouncement as to opposition to unlawful practices during the same, is not protected conduct for purposes of Title VII anti-retaliation provisions.

**Third,** dismissal of Plaintiff's supplemental claims under Article 1802 and the United States and Puerto Rico Constitution is warranted because Berríos cannot state a claim that she is entitled to relief under these statutes.

## II. BRIEF NARRATIVE STATEMENT OF OPERATIVE FACTS

Berríos began working at Ikon as an Administrative Assistant on June 7, 2006 on a probationary basis. She was hired by Ikon to provide support to Michelle Cintrón ("Cintrón") who was the Executive Administrative Assistant to Haedo, President and Managing Principal of Ikon. On or around the end of 2006, Cintrón left Ikon and Berríos became Haedo's Administrative Assistant. **(Facts ¶ 1.)**[2]

As Haedo's Administrative Assistant, Berríos' responsibilities included: 1) coordinating trips for Haedo; 2) answering phone calls and taking messages; 3) coordinating meetings in his calendar; 4) managing Haedo's correspondence; 5) filing; 6) revising Haedo's e-mails, among others. Most importantly, Berríos' functions also included supervision different aspects of the management of Ikon Management, Haedo's personal business endeavor, such as accounts payable, accounting and the assignment of tasks to the employees of this Company. **(Facts ¶ 6.)**

Effective June 1, 2007, Berríos was given additional functions in the position of Executive Administrative Assistant/Coordinator-Principal Offices which entailed an increase of her to annual base salary of $34,000. **(Facts ¶ 7.)** Berríos' additional functions included working with Ikon's Executive Committee to provide Haedo with

---

[2]   References to paragraphs in Ikon's Statement of Uncontested Material Facts are included as (Facts ¶ ____.).

status reports regarding the status of projects; management of administrative matters between Ikon and the office building landlord; and other general administrative matters of Haedo's office. Id.

Subsequently, as of April 21, 2008, Berríos was offered and accepted the position of Project Manager-Corporate Relations with an annual base salary of $34,000, a stipend of $35 a month for parking and eligibility for variable pay up to 15% of her base salary.  **(Facts ¶ 8.)**  As Project Manager-Corporate Relations, Berríos began providing support to other members of Ikon's upper management, such as García and Jessica González ("González"), Ikon's Director of Finance around that time, in their own projects, and not just exclusively to Haedo. **(Facts ¶ 9.)** Due to her excellent performance, Berríos received a $6,000 per year increase in base salary in October of 2008, retroactive to August 1, 2008.  That year she also received a $1450 performance bonus.  **(Facts ¶ 8.)**

On or around May or June of 2008, a former Ikon employee filed a claim of age and sex discrimination against Ikon with the Department of Labor alleging that García had favored Berríos over said former employee because of a supposed sexual relationship between García and Berríos.  **(Facts ¶ 11.)**  As a result of this discrimination charge, Ikon commenced an internal investigation into the allegations of sexual favoritism. **(Facts ¶ 12.)** The results of the investigation reflected that García did not engage in sexual favoritism toward Berríos. However, both Berríos and García were reprimanded by Haedo for unprofessional language in business e-mails exchanged between them.  **(Facts ¶ 13.)** Berríos admitted that the language used in those e-mails, plus others originating from her Ikon e-mail account, were unprofessional and a violation

of the Company's policies; and that Haedo was correct in reprimanding her for the language she used in those business e-mails. Id.

Berríos alleges that soon after the internal investigation into allegations of García's supposed sexual favoritism of Berríos commenced, Haedo began harassing her with sexual comments and accusations. For example, Berríos alleges that in June of 2008, during the discussion of her 2007-2008 performance evaluation, Haedo supposedly told her that for her good evaluations to continue she had to "stop fucking and screwing with Félix García."[3] **(Facts ¶ 19).** Berríos also alleges that Haedo supposedly told her that because "she was screwing around" with Felix [García], she had one foot out of Ikon, that he [Haedo] didn't understand "why she had gone off to fuck with Felix"; that "Félix is ugly and broke"; that "he [Haedo] is the one who has money" and; that he expected that if "she was going to fuck with anybody, it would be him." **(Facts ¶ 20.)** Plaintiff attributes similar comments to Haedo regarding her alleged sexual relationship with García. Id.

Berríos alleges that Haedo also said that "she [Berríos] was a whore" and that because she was supposedly "screwing Felix instead of screwing with him, look what happened." **(Facts ¶ 22.)** Berríos also alleges that Haedo supposedly told her that they could have sex in the corners and desks of the office and that she wouldn't be the first secretary with whom he had "screwed around." **(Facts ¶ 21.)** Berríos conveniently does not remember the exact dates of these comments. According to Berríos, Haedo made the comments to her on a "daily basis", although she can name no witnesses to these alleged comments addressed to her other than herself. **(Facts ¶ 22-23.)**

---

[3] The explicit and profane language used in the instant motion is a literal translation into English of language as testified by Plaintiff in her deposition.

Despite the fact that the comments from Haedo were supposedly on a "daily basis", Berríos admittedly never reported them, as per the reporting procedures established in Ikon's Employee Manual. Specifically, Ikon has a policy that explicitly prohibits unlawful sexual harassment and provides a mechanism for employees to report such harassment. **(Facts ¶ 26.)** Said policy is contained in Ikon's Employee Manual and states under the heading "Reporting Procedure" that any employee who experiences or witnesses harassment should immediately report the incident to his/her supervisor. **(Facts ¶ 27.)** If **the employee feels reporting the conduct to the supervisor is inappropriate, he/she may report the incident to the "Firm Principal, local Human Resources Representative or NFP Corporate Human Resources".[4]** The telephone number for NFP Corporate Human Resources is included in page 3 of the Ikon Employee Manual.  Id.

Although Berríos received Ikon's Employee Manual and was advised to review it and raise any questions regarding the matters discussed in the Manual, at the time she was allegedly harassed by the President, Haedo, Berríos admitted that **she never even reviewed the Employee Manual to check the appropriate procedures for reporting incidents of sexual harassment. (Facts ¶ 30.)** That is, despite being an alleged victim of daily sexual harassment by Haedo, she never referred or revised the Ikon Employee Manual, even though she had received a copy, so as to check the appropriate reporting procedures.

In fact, while actively working at Ikon, Berríos never complained in writing about Haedo's supposed continuous harassment. **(Facts ¶ 31.)**  Berríos knew that NFP was

---

[4]   National Financial Partners ("NFP") is Ikon's parent company.  (Facts ¶ 28.)

Ikon's parent company, to whom Haedo as President reported and was accountable, but she never reported the alleged unlawful harassment to the NFP Human Resources department, as expressly provided in Ikon's Employee Manual. **(Facts ¶ 32.)**

Berríos also received numerous raises and good evaluations during her employment at Ikon. **(Facts ¶¶ 5, 7, 8. 10.)**

On November 12, 2008, Berríos responded to an e-mail sent by Haedo, her alleged harasser stating, among others, that "she respected him and respects the organization". **(Facts ¶ 14.)** Mere weeks later, in late November 2008, Berríos went on a medical leave of absence and never returned to work at Ikon. **(Facts ¶ 15.)** From November of 2008 until April of 2009, Berríos did not have any contact with Haedo. It wasn't until almost five (5) months later on April 16, 2009, that Berríos sent a resignation letter to Haedo by e-mail. Id. The resignation letter was the first time that Berríos raised a complaint in writing of supposed acts of harassment by Haedo. Id.

On April 29, 2009, Lilliam Delgado, Ikon's Director of Organization Development, sent Berríos a letter requesting a meeting with Berríos to discuss the contents of her letter. **(Facts ¶ 16.)** Delgado also told Berríos that her resignation letter would be put on hold. Id. On that same day, Berríos responded by e-mail to Delgado stating that the person that she [Berríos] wanted to speak with was Haedo and not Delgado. Id. Berríos copied Haedo on her e-mail response. Id. Haedo immediately responded to Berríos' request for a meeting with him by stating that he had sent her an e-mail note to see when they could meet, including his mobile phone number in the response. **(Facts ¶ 17.)**

On May 15, 2009, Haedo followed up by e-mail with Berríos informing her of his availability to meet with her and to schedule a meeting on May 20th at 8:30 am. **(Facts ¶ 18.)** Berríos admittedly never responded to Haedo's e-mails. Id. Instead, she commenced the administrative process before the EEOC which eventually led to the instant complaint.

### III. DISCUSSION

**A.  Ikon used reasonable care to prevent and correct sexual harassment, but Berríos unreasonably failed to avail herself of the corrective or preventive measures provided by Ikon.**

Sexual harassment which is sufficiently severe or pervasive as to alter the conditions of the victim's employment creates an abusive working environment and violates Title VII. Pa. State Police v. Suders, 542 U.S. 129, 133 (2004); Faragher v. City of Boca Raton, 524 U.S. 775, 786 (1998). Berríos alleges that Ikon violated Title VII through discrimination and harassment based on her sex and gender, all of which resulted in constructive discharge. According to Berríos, she was subject to sexual harassment by Haedo because of numerous comments he supposedly made to her during June through November of 2008. Ikon denies that Haedo made any of the comments or engaged in the conduct attributed to him by Berríos. However, Ikon concedes that a controversy of fact exists on this matter.

Thus, **solely for purposes of the instant motion for partial summary judgment**, Ikon will assume that Haedo made the comments being attributed to him by Berríos during her deposition. Outside of the context of this motion for summary judgment, Ikon emphatically denies the veracity of Plaintiff's testimony. Even under these assumptions, and indulging all reasonable inferences in favor of the Plaintiff, Ikon

cannot be held liable for failing to promptly remedy harassment of which it did not know or could have known about because Berríos unreasonably failed to report the harassment to NFP, Haedo's superiors. See Faragher v. City of Boca Raton, supra; Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1989).

Under the *Faragher/Ellerth* defense, an employer may avoid responsibility if it shows that it: (1) "exercised reasonable care to prevent and correct promptly" the harassment; *and* (2) that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765. The *Faragher/Ellerth* defense applies in the instant case, even though "constructive discharge" is the tangible employment action alleged by Plaintiff. See Pennsylvania State Police v. Suders, supra; Lee-Crespo v. Schering-Plough del Caribe, Inc., 354 F.3d 34 (1st Cir. 2003); Reed v. MBNA Marketing Systems, Inc., 333 F3d 27 (1st Cir. 2003).

As discussed in detail below, since Berríos unreasonably failed to avail herself of the corrective or preventive measures provided by Ikon, dismissal of her sexual harassment claims is appropriate.

1. Ikon used reasonable care to prevent and correct sexual harassment.

It is undisputed that Ikon has a policy that explicitly prohibits unlawful sexual harassment and provides a mechanism for employees to report such harassment. **(Facts ¶ 26.)** Instructions on how to report harassment are contained in Ikon's Employee Manual, including the numbers of the local and corporate Human Resources offices. **(Facts ¶ 27.)** Specifically, under the heading "Reporting Procedure", any employee who experiences or witnesses harassment or discrimination should immediately report the incident to his/her supervisor. Id. If the employee feels reporting

the conduct to the supervisor is inappropriate, he/she may report the incident to the "Firm Principal, local Human Resources Representative or **NFP Corporate Human Resources**". Id. (Emphasis provided.)

Berríos admitted that during her employment with Ikon she received a copy of Ikon's Employee Manual which contains Ikon's sexual harassment policy and reporting procedure. **(Facts ¶ 29.)** Yet, despite her knowledge of the Company's policies, Berríos unreasonably failed to take advantage of the preventive and corrective opportunities available to her.

2. <u>Berríos failed to avail preventive and corrective opportunities provided by Ikon.</u>

Berríos claims that she complained verbally about Haedo's sexual comments to Ikon officials González, García and Delgado, who all reported to Haedo, Ikon's President. **(Facts ¶ 25.)** However, Berríos admitted that she never reviewed the Employee Manual to check the appropriate procedures for reporting incidents of sexual harassment. **(Facts ¶ 30.)** As stated above, the Ikon Manual states that if reporting an incident to a supervisor is inappropriate, as would have been the case with Haedo, Berríos should have contacted the Corporate Human Resources Department at NFP which was the parent company to which Haedo, as President, reported and was accountable to. Nevertheless, Berríos never made a complaint in writing to Ikon nor raised any written or verbal complaints to NFP about Haedo's supposed comments of sexual harassment. **(Facts ¶ 31.)** Berríos was aware that NFP was Ikon's parent company; during her employment Berríos had contacted the NFP offices and/or met NFP representatives; and she knew Haedo reported to NFP. **(Facts ¶ 32.)** Notwithstanding, Berríos never reported the alleged sexual harassment to the NFP

Human Resources department. **(Facts ¶ 31.)** Berríos knew all the persons she complained reported directly to Haedo and, as such, the reasonable and appropriate procedure to report alleged harassment by Haedo would have been to contact the HR Department at NFP.

As an excuse for not contacting NFP, Berríos alleges that, in any event, the person in charge of Human Resources at NFP, Emily Arian, was a friend of Haedo. **(Facts ¶ 33.)** However, Arian is not mentioned in the Employee Manual as the NFP contact person for the reporting of complaints to NFP Human Resources, id, thus Berríos excuses for failing to use the most reasonable method included in the policy were not justified. Simply put, Berríos unreasonably failed to provide Ikon with an opportunity to correct any inappropriate conduct by Haedo and therefore should be prevented from prevailing on her sexual harassment claims. See Young v. R.R. Morrison & Son, Inc., 159 F. Supp.2d 921 (N.D. Miss. 2000) ("If the preventive purpose of Title VII is to be effective, harassment victims must step forward and at least give management an opportunity to provide a remedy."); Lauderdale v. Texas Dept. of Criminal Justice, Inst. Div., 512 F.3d 157, 164-65 (5th Cir. 2007) (employee's failure to file a subsequent complaint after immediate supervisor indicated an unwillingness to act on her initial complaint was unreasonable, and employer therefore established the *Ellerth/Faragher* defense and avoided liability).

A plaintiff who knows about her employer's complaint procedure and unreasonably fails to use it in an effective way, even if she tells a lower manager she is being harassed, runs head long into the prophylactic rule announced in *Faragher*, which was not designed to protect sensitive employees, but rather to encourage all employees

to "'avoid harm' when doing so is possible, and to ensure a plaintiff is not "reward[ed] ... for what her own efforts could have avoided." Taylor v. Solis, 571 F.3d 1313, 1318 (D.C. Cir. 2009) citing Ellerth, 524 U.S. at 806-07.  It merits mentioning that, at the time of the alleged harassment, Berríos was a mature 39-year-old professional, with a Bachelor's degree and an excellent understanding of both English and Spanish, who had years of experience working as an administrative assistant and administrative supervisor positions in both large and small companies. **(Facts ¶ 2,3,4.)**   Cf. Monteagudo v. ELA, 554 F.3d 164 (1st Cir. 2009)(45 yr-old manager subjected his 22-yr old subordinate to unwanted advances) and Reed v. MBNA Marketing Systems, Inc., 333 F3d 27 (1st Cir. 2003)(17-yr old telemarketing employee harassed by supervisor twice her age.)

Moreover, mere "fear" for not reporting harassment is insufficient to bar Ikon's use of the affirmative defense.  Indeed, "failing to utilize complaint procedures because of generalized retaliation concerns is not reasonable in light of the overall purposes of Title VII." Madray v. Publix Super Mkts., Inc., 30 F. Supp.2d 1371, 1375 (S.D. Fla. 1998) (employee's generalized fear of repercussions cannot form the basis for failure to complaint to employer). See also Shaw v. AutoZone, Inc., 180 F.3d 806, 813 (7th Cir.1999) ("subjective fears of confrontation, unpleasantness, or retaliation do not alleviate [her] duty under *Ellerth* to alert the employer to the allegedly hostile environment.")  Compelling a plaintiff to come forward despite perceived repercussions is essential, since "[t]o permit an employee to disregard a policy of which she was admittedly aware based on generalized fears would require an employer to be

automatically liable for harassment committed by a supervisor. This is a result which the Supreme Court expressly sought to avoid." Madray, 30 F. Supp.2d at 1376.

Since Ikon took the reasonable steps necessary to prevent and correct sexual harassment and Berríos unreasonably failed to avail herself of these opportunities, summary judgment on Berríos harassment and discrimination claims is appropriate.

    3.    Berríos' sexual harassment claims under local statutes should also be dismissed.

For the reasons discussed above, Ikon is also entitled to summary judgment on Berríos' parallel claims of sex and gender discrimination and harassment under Puerto Rico's anti-discrimination and anti-harassment statutes - Act 17 of April 22, 1988, P.R. Laws. Tit. Ann. 29 § 155 et seq ("Act 17"); Act 69 of July 6, 1985, P.R. Laws. Tit. Ann. 29 § 1321 ("Act 69") and Act No. 100 of June 30, 1959, PR Laws Ann. Tit. 29 § 146 et seq. ("Act 100"). Pursuant to Fed.R.Civ.P.10(c), Ikon incorporates by reference all the arguments previously included in this memorandum of law regarding sexual harassment claims under Title VII.  Notwithstanding the different evidentiary paths between Berríos' federal law claims and local law claims, the result is the same under federal and local law.  See Dávila v. Corp. de P.R. para la Difusión Pública, 498 F.3d 9, 18 (1st Cir.2007)("We need not wax longuiloquent. On the merits, [a sex] discrimination claim asserted under [Title VII] and under Law 100 are coterminous"); see also González v. El Día, Inc., 304 F.3d 63, 73 n. 7 (1st Cir.2002).

**B.    Berríos cannot establish a *prima facie* case of retaliation.**

Pursuant to Title VII, it is unlawful "for an employer to discriminate against any of its employees or applicants for employment ... because he [or she] has opposed any practice made an unlawful employment practice by [Title VII], or because the [her or

she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

In her "Third Cause of Action" in the Complaint, Berríos contends that Ikon retaliated against her "due to [her] opposition against defendant's unlawful employment practices, in violation of Title VII". (See Complaint, Docket No. 1 at p. 7.) When questioned as to the basis of her retaliation claims during her deposition, Berríos averred that Haedo retaliated against her because she **participated** and was the object of an unrelated **internal investigation** conducted by Ikon into discrimination and sexual favoritism allegations made by a former employee. **(Facts ¶ 24.)** Berríos' deposition testimony is clear that she is invoking the "participation" clause of Title VII's anti-retaliation provision. However, **mere participation in an employer's internal investigation, absent some sort of opposition to unlawful conduct during the course of the same, is insufficient to qualify as a protected activity under Title VII**. Ignoring the fact that Plaintiff's allegations in the complaint are inconsistent with her deposition testimony, Berríos' retaliation claim under Title VII still should be dismissed because of her failure to establish a *prima facie* case of retaliation.[5]

To establish a *prima facie* case of retaliation, a plaintiff must make an initial showing that (1) **she engaged in protected conduct**, (2) she was thereafter subjected to an adverse employment action, and (3) a causal connection existed between the

---

[5]    The instant case is different from when, during the course of an internal investigation of another employee's complaints, **an employee opposes or reports being the victim of unlawful sexual harassment**. Such was the case in Crawford v. Metropolitan Government of Nashville, 129 S.Ct. 846 (2009), where the United States Supreme Court held that the "opposition" clause of Title VII's anti-retaliation provisions protects employees who report incidents of their own harassment while cooperating with an employer-initiated internal investigation of another employee's discrimination complaint.

protected conduct and the adverse action." Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 84 (1st Cir. 2005) citing Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991). (Emphasis provided.)

The participation clause of Title VII's anti-retaliation provision requires participation **in a proceeding under Title VII.** Hatmaker v. Memorial Medical Center, 619 F.3d 741, 746-747 (7th Cir. 2010). **A purely internal investigation does not involve a "charge," or testimony, and neither is it a "proceeding" or a "hearing."** Id. (Emphasis provided.) "To bring an internal investigation within the scope of the clause we would have to rewrite the statute." Id. *See also* Jesep v. Northeast Health, 2005 WL 958405, *3 (1st Cir.2005) (unpublished) (Holding that most courts have concluded that participation in an internal investigation by an employer without more, and in the absence of a complaint to the Equal Employment Opportunity Commission, is not protected conduct.); DeHart v. Baker Hughes Oilfied Operations, Inc., 214 Fed. Apx 437. 441 (5th Cir. 2007)(holding that an employee cannot claim a co-worker's protected activity as her own); Abbott v. Crown Motor Co., Inc., 348 F.3d 537, 543 (6th Cir.2003); EEOC v. Total System Services, Inc., 221 F.3d 1171, 1174 (11th Cir.2000); Brower v. Runyon, 178 F.3d 1002, 1006 (8th Cir.1999); Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir.1990); cf, Hashimoto v. Dalton, 118 F.3d 671, 679-80 (9th Cir.1997); and Kubicko v. Ogden Logistics Servs., 181 F.3d 544, 551 (4th Cir.1997).

In other words, "the 'investigation' to which section 2000e-3 refers does not include an investigation by the employer, as distinct from one by an official body authorized to enforce Title VII." Sawyer v. Nicholson, 2010 WL 4510954 (N.D.Ill. Nov. 1, 2010). Inasmuch as Berríos did not participate in an official proceeding under Title VII,

but rather an internal investigation conducted by her employer wherein she did not raise opposition nor denounce illegal practices so as to constitute a "protected activity", she cannot comply with the first prong of the requisite *prima facie* case and her retaliation claim should be dismissed.

**C.  Berríos claims under Article 1802 and the Constitutions should be dismissed for failure to state a claim under which relief can be granted.**

1. Dismissal of Plaintiff's claim under Article 1802 is warranted.

Berríos also sets forth a claim for damages under Article 1802 Puerto Rico Civil Code, explained under the "Fifth Cause of Action." (See Complaint, Docket No. 1 at p. 7.) However, since Plaintiff's state claims in the Complaint arise under Puerto Rico's special employment statutes, Act 80, Act 100, Act 17 and Act 69, the remedies provided therein prevail over a general statute such as Article 1802. Thus, Plaintiff claim under Article 1802 should be dismissed, with prejudice.

This Court has repeatedly held that "in the labor and employment context, a plaintiff 'is barred from using [conduct covered by a specific labor law] to also bring a claim under Article 1802.'" Medina v. Adecco, 561 F. Supp. 2d 162, 175-76 (D.P.R. 2008)(GAG)(dismissing Article 1802 claims against a plaintiff's individual supervisor and another individual employee of plaintiff's employer, where plaintiff had pled claims under specific Puerto Rico employment statutes) citing Rosario v. McConnell Valdés, 2008 WL 509204 (D.P.R. 2008)(CCC). In other words, "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under article 1802 of the Civil Code of Puerto Rico." Rosario, supra at *2.

A plaintiff's general tort claims against an employer can only survive if the complaint properly alleges that the employer has engaged in tortious conduct **independent from the alleged employment discrimination and unjust dismissal**. Suarez v. Venator Group, Inc., 2009 U.S. Dist. LEXIS 107190 (D.P.R. Nov. 17, 2009)(emphasis provided) citing Barreto v. ITT World Directories, Inc., 62 F. Supp. 2d 387, 395 (D.P.R. 1999); Medina, 561 F. Supp. 2d at 175-76.

The conduct alleged by Plaintiff in the Fifth Cause of Action is not "based on tortious or negligent conduct **distinct** from that covered by the specific labor law(s) invoked." Rosario, supra (emphasis provided). Thus, Berríos cannot set forth a duplicative claim under Article 1802 based on Ikon's alleged discriminatory and harassing conduct and dismissal of this claim is proper. See Peña-Alcantara v. Correctional Health Services, Corp., 2009 WL 890467 (D.P.R. 2009)(dismissing Plaintiff's claims under Articles 1802 and 1803, since, other than the allegations relating to discrimination based on national origin and retaliation there were no facts of a separate tort action.)

2. <u>Dismissal of Plaintiff's Constitutional claims is also warranted</u>.

The "First Cause of Action" of the Complaint alleges a violation of Plaintiff's civil rights under the Constitutions of the United States of America and the Commonwealth of Puerto Rico. (See Docket No. 1 at p. 7.) Nonetheless, in general, a state action is an essential requirement to establish a cause of action under both Constitutions. See Toomer v. Witsell, 334 U.S. 385 (1948); Doe v. Bolton, 410 U.S. 179 (1973); Supreme Court of New Hampshire v. Piper, 470 U.S. 274 (1985).  Without state action, the provisions of the named Constitutions cannot be invoked. Since Berríos has no

allegations concerning a state action, she has no remedy at law under the Constitutions of the United States of America and the Commonwealth Puerto Rico, thus these claims should be dismissed with prejudice.

### IV.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Torrech-Hernández v. GE, 519 F.3d 41, 46 (1st Cir. 2008). A "genuine" issue is one that could be resolved in favor of either party, and a "material fact" is one that has the potential of affecting the outcome of the case. Torres-Martínez v. P.R. Dep't of Corr., 485 F.3d 19, 22 (1st Cir. 2007) citing Calero-Cerezo v. U.S. Department of Justice, 355 F.3d 6 (1st Cir. 2004).

"Once the moving party avers the absence of genuine issues of material fact, the non-movant must show that a factual dispute does exist." Velázquez-Fernández v. NCE Foods, Inc., 476 F.3d 6, 10 (1st Cir. 2007). However, not every factual controversy bars access to summary judgment. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F.3d 32, 38 (1st Cir. 2002)(citations omitted).

The First Circuit has clearly stated that "[e]ven in employment discrimination cases where elusive concepts such as motive or intent are at issue, **summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation**." Azimi v.

Jordan's Meats, Inc., 456 F.3d 228, 241 (1st Cir. 2006)(emphasis provided)(citations omitted). Nor will "**effusive rhetoric**" and "**optimistic surmise**" suffice to establish a genuine issue of material fact. See Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir.1997). The non-movant has an "obligation to offer the court more than **steamy rhetoric and bare conclusions**." Lawton v. State Mut.Life Assurance Co. of Am., 101 F.3d 218, 223 (1st Cir.1996) [Our emphasis]

Ikon's accompanying Statement of Uncontested Material Facts clearly demonstrates that, in the instant case there is no genuine issue as to any material fact which would warrant taking this case to trial. Thus, for the reasons stated above, summary judgment in favor of Ikon, dismissing with prejudice all claims, should be entered.

WHEREFORE, In light of the above, Ikon respectfully requests that this Honorable Court grant partial summary judgment in its favor pursuant to Fed. R. Civ. P. 56, dismiss Plaintiff's causes of action under the Title VII, Act 100, Act 17, Act 69 , Article 1802 of the Puerto Rico Civil Code and the Puerto Rico and United States' Constitutions , with prejudice; and award Ikon costs and attorneys' fees.

WE HEREBY CERTIFY that on this same date, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Anibal Escanellas-Rivera, Esq.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 11th day of April, 2011.

**MCCONNELL VALDÉS, LLC**
Attorneys for Ikon
PO Box 364225
San Juan, PR  00936-4225
270 Muñoz Rivera Ave.
San Juan, PR  00918
Telephone: (787) 250-5652/5682
Facsimile: (787) 759-2780

*s/Anita Montaner-Sevillano*
Anita Montaner-Sevillano
USDC-PR No.  209606
ams@mcvpr.com

*s/ Maralyssa Álvarez-Sánchez*
Maralyssa Álvarez-Sánchez
USDC-PR No. 224011
max@mcvpr.com